IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JOSE GARZA,

              Plaintiff,

      v.                      CASE NO. 12-3139-SAC

CORRECT CARE SOLUTIONS,
et al.,

              Defendants.

**MEMORANDUM AND ORDER**

The original pro se civil rights complaint filed herein pursuant to 42 U.S.C. § 1983[1] was previously screened by the court and plaintiff was ordered to satisfy the filing fee as well as to file an Amended Complaint that cured the deficiencies set forth in the screening order. The matter is now before the court upon plaintiff's Application to Proceed without Prepayment of Fees (Doc. 4), Amended Complaint (Doc. 5), and Motion to Amend Complaint (Doc. 7). The court has considered all materials filed and finds that this action must be dismissed because the First Amended Complaint fails to state a claim entitling Mr. Garza to relief under § 1983.


**I. FEES ASSESSED**

---

[1]   Plaintiff's assertions of "additional" and "international jurisdiction" are either supported by no facts or are frivolous and are not discussed further.

1

28 U.S.C. § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of the filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit to his account was $59.00 and the average monthly balance was $12.74. The court therefore assesses an initial partial fee of $11.50, which is twenty percent of the average monthly deposit rounded to the lower half dollar. Plaintiff must immediately submit this initial partial fee to the court. Plaintiff's motion to proceed without prepayment of the entire fee is granted, and he is assessed the remainder of the $350.00 filing fee. He is thus allowed to pay that remainder in installments automatically deducted from his account pursuant to 28 U.S.C. § 1915(b)(2).

## II. FIRST AMENDED COMPLAINT

The court has screened plaintiff's First Amended Complaint (Doc. 5) as required by 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). In the original complaint, the only named defendant was Correct Care Solutions (CCS). When the court notified plaintiff of the defects in his original complaint they included this defendant. In his Amended Complaint, Mr. Garza

names 10 defendants and three "John Doe" defendants. The newly named defendants are: Johnnie Goddard, Secretary of Corrections (SOC) Designee; Dr. Lawhorn, CCS Regional Director; Douglas Waddington, Warden, Larned Correctional Mental Health Facility (LCMHF); Dr. S. Kepka, CCS/LCMHF; Dr. Daniel Stanton, LCMHF; Dr. William Slater, CCS; Marlene Able, Director of Nurses, LCMHF; Nurse Kendra Barker, LCMHF; Nurse Barker, LCMHF; and Nurse Dee Rundell, LCMHF Clinic. The three John Doe defendants are described as one prison guard and two inmates at the Lansing Correctional Facility (LCF) in 2003.

As factual support for the Amended Complaint, Mr. Garza alleges the following. He was brutally raped by the John Doe defendants at the LCF in 2003 and contracted anal warts, human papoloma virus (HPU) and/or a sexually transmitted disease (STD) as a result. Prior to the attack, he had none of these conditions. Nor did he have hemorrhoids, hernias, or difficulty and pain when defecating. Since the 2003 rape his physical and emotional pain and suffering have been constant, he cannot sleep due to the pain and nightmares, and he is in excruciating pain when he defecates.

Plaintiff further alleges that he has "attempted to address issues" through KDOC grievances, but the remedies failed due to "the apathy" of defendant Warden Waddington and defendant Goddard. In response to the question on his form complaint

regarding exhaustion of administrative remedies, he alleges that Waddington and Goddard "ignore" the rape and his suffering, and have failed to "realistically address issues or resolve grievances."

As Count I and II of his Amended Complaint, plaintiff claims that he was injured during the alleged 2003 rape at the LCF and continues to suffer physical and emotional pain as a result. He asserts that his First, Fifth, Sixth,[2] Eighth, and Fourteenth Amendments have been violated. As Count III, plaintiff claims "medical malpractice" by CCS defendants. As supporting facts, he alleges that he is in constant pain despite CCS attempts to relieve his rectal bleeding. Plaintiff generally alleges that defendants acted with deliberate indifference. The relief requested by plaintiff is punitive damages for "continuing unrelieved suffering."

## III.  DISCUSSION

### A.  Rape Assault Claim

Plaintiff claims that in 2003 the three John Doe defendants violated his constitutional rights by participating in a brutal "homosexual gang rape" of him at the LCF. Mr. Garza is well aware that he attempted to litigate this very serious claim in

---

[2]    Plaintiff alleges no facts whatsoever to support claims under the First, Fifth or Sixth Amendments; and these assertions are not discussed further.

prior cases beginning in 2009, without success. In one of those cases, it was determined upon defendants' motion for summary judgment that Mr. Garza had failed to exhaust administrative remedies on this claim. See *Garza v. CCS*, No. 09-3146 (D.Kan. June 28, 2011), *aff'd*, App.No. 11-3194 (10th Cir. Aug. 29, 2011). In all prior cases, he was notified of other fatal flaws in this claim including that it was barred by the two-year statute of limitations; that he failed to name proper defendants or to adequately identify defendants for purposes of service of process; and that he failed to allege facts showing personal participation in the attack by defendants he did name. See *Garza v. Lansing Prison*, No. 09-3113 (Sept. 9, 2009); *Garza v. Rohling*, No. 09-3144 (Feb. 5, 2010); *Garza v. CCS*, No. 09-3145 (Feb. 5, 2010); *Garza v. Larned State Hospital*, 10-3140 (Apr. 26, 2011). Mr. Garza was repeatedly given the opportunity to cure the deficiencies found in his prior complaints but he failed either to cure the deficiencies or respond altogether. He alleges no facts in this case indicating that the time-bar and failure-to-exhaust deficiencies have been or could be remedied. In short, plaintiff alleges no facts which would allow him to relitigate this claim, which has already been dismissed for multiple reasons in five prior cases filed by him.

Plaintiff's added assertions in his Amended Complaint, that the three John Doe defendants should be charged with violations

of cited state criminal statutes, utterly fail to state a claim for relief under § 1983. This court has no authority to charge individuals with violations of state criminal statutes. That authority belongs to the appropriate county district attorney. For these reasons, the court dismisses plaintiff's claims of assault and injury at the hands of the three John Doe defendants, with prejudice, as repetitive, and therefore abusive and frivolous, and for failure to state a viable claim for relief.

### B.  *Denial of Medical Treatment Claim*

Plaintiff claims that he suffers from specific serious medical conditions as a result of the alleged assault that have not been properly diagnosed and treated. However, Mr. Garza does not write upon a clean slate before this court as to this claim either.[3]  In prior cases, he has raised similar claims against a variety of defendants, without success. See *Garza v. Lansing*, No. 09-3113; *Garza v. Rohling,* No. 09-3144; *Garza v. CCS* No. 09-3145; and *Garza v. CCS,* No. 09-3146. Plaintiff's claim of denial of medical treatment against defendants in his Amended Complaint suffers from the same defects as in the original complaint and his prior cases.

---

[3]     Mr. Garza was less than candid in citing only one case as his prior relevant litigation history and in stating that the issues in that case were "unresolved by the court." The court takes judicial notice of the relevant prior cases cited herein, which were filed by Mr. Garza.

First, Mr. Garza again fails to allege sufficient facts to show the personal participation of each named defendant in the alleged denial of medical care. He has repeatedly been informed in this and his prior cases that an essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based and that he must allege facts showing personal participation on the part of each named defendant. In this and his prior cases, plaintiff was given time to name appropriate persons as defendants and to allege facts showing each defendant's personal participation. He was specifically directed in the court's prior order in this case that "all defendants must again be named in the body of the complaint together with allegations of fact describing the unconstitutional acts taken by each such defendant including dates and circumstances." Order (Doc. 3) at 14.

In his Amended Complaint, Mr. Garza names Nurse Able and Dr. Stanton as defendants along with three other doctors and three other nurses, all of whom he baldly alleges were involved in providing medical care at the LCMHF. However, in the body of his new complaint, which has superseded the original, Mr. Garza does not describe a single act taken with respect to his medical care and then ascribe that act to a particular defendant. Nor does he provide a single date as to when, or describe any

7

circumstances under which, he requested medical treatment that was denied. Instead, he continues to complain only in the most general terms that for years he has suffered from denial of treatment for particular conditions that he believes he contracted as a result of the 2003 sexual assault and that all the named defendants should be held accountable.

The remaining defendants named by plaintiff: LCMHF Warden Waddington; and SOC employee Goddard are likewise not alleged to have personally participated in denial of medical treatment to Mr. Garza. Even assuming that these two supervisory officials affirmed the denial of a grievance submitted by Mr. Garza, that alone is not cause for finding that they actually participated in the alleged denial of treatment. Nor does plaintiff describe a single act taken by Dr. Lawhorn, identified only as CCS Regional Director.[4] The court concludes from the foregoing that plaintiff has failed to allege sufficient facts in his Amended Complaint to show personal participation on the part of any defendant in the alleged denial of his requests for medical treatment.

Second, plaintiff does not allege sufficient facts to establish that he has the serious medical conditions that he

---

[4] In his Amended Complaint, Mr. Garza does not name the CCS as a defendant. Nor does he describe any unconstitutional policy or custom of the CCS and allege facts showing that injury was caused by that policy or custom. As he was previously informed, he therefore fails to allege facts establishing liability on the part of CCS.

claims have gone untreated. In the objective analysis of the deliberate indifference test, the inmate must show the presence of a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104, 105 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)(quoting *Farmer*, 511 U.S. at 834). The serious medical need claimed by Mr. Garza is that he requires treatment for anal warts, HPU and/or an STD. However, Mr. Garza does not show that he was ever diagnosed by a physician with these conditions.[5] Nor does he allege facts demonstrating that he has displayed unmistakable symptoms of these particular conditions.

In fact, plaintiff's own allegations and exhibits, including medical and grievance records filed by him in this

---

[5] In its prior order, the court discussed a small white card submitted by plaintiff dated September 12, 2011, which had handwritten initials upon it that Garza claimed were a doctor's and the words: "Anal/genita warts or Condylomas accuminata, Human Papoloma Virus (HPV)(STD)." Garza alleged that "the doctor from Hutch" gave him the card and that this was his diagnosis. The court directed the clerk to file the "Note to Court" as plaintiff's "Supplement with Exhibit." Plaintiff does not mention this alleged diagnosis in his Amended Complaint. Even if he did, the card is hardly competent evidence.

case, refute rather than support his claim that defendants have diagnosed him as having anal warts, HPU or an STD. Medical records dated February 2009 show that he complained of rectal bleeding and "something in rectum," telling the RN that he was worried about the bleeding and the feeling of having needles in his rectum. He said he had an "ongoing problem" since he was raped at Lansing.[6] The nurse recorded that he had been seen several times for constipation, he refused to have her examine his rectum, and he was scheduled for a rectal exam by Dr. Kepka. Records dated March 2009 show that Mr. Garza had "been on numerous medications for constipation;" had "surgery to the rectum some time ago" due to trauma; and had chronic rectal bright-red bleeding with no weight loss. Records dated February

---

[6] In one of plaintiff's prior cases raising the same claim, *Garza v. CCS*, No. 09-3146, the court, after considering the Martinez Report, noted the following medical history:

> Plaintiff's interview and KDOC medical records provided with the Martinez Report indicate that he informed prison medical staff that his medical history prior to KDOC custody included an injury on the job in 1998 when a piece of metal entered and tore his anus and surgery to repair his sphincter. His medical records also indicate that he informed prison medical staff that he had been treated on the street for anal polyps, fissures, and rectal bleeding. Plaintiff stated in his interview that he had three surgeries while in KDOC confinement. His records indicate that he had many examinations for chronic rectal prolapse and bleeding and was provided numerous medications, a colonoscopy, a hemorrhoidectomy, surgery for recurrent prolapse, and surgery for a ventral hernia. There is no indication in the record that prior to the filing of this complaint, Mr. Garza either reported or was diagnosed with an internal injury caused by a sexual assault. The court makes no findings as to the correctness of these records, but simply notes that Mr. Garza was in fact treated for the very symptoms he claims resulted from a sexual assault as symptoms of other preexisting ailments. The court expresses no opinion as to the adequacy of that treatment. . . .

*Id.* (Doc. 35) at 7.

2010 show Garza reported that the blood in his stool comes and goes, and a large ventral hernia was observed below his waist line[7] as well as rectal bleeding "possibly due to hemorrhoids." Records from March 2010 show he was seen by Mental Health and was upset that he again had rectal bleeding.  Mr. Garza exhibits his grievance dated July 1, 2011, in which he stated that he contracted an STD/anal warts between 2003 and 2011 from the rape, that he had been telling "the doctors and nurse" at Lansing and Larned that he "felt" that what he had "was more than just" hemorrhoids, but "they would just look at (his) backside" and tell him they were hemorrhoids.  (Doc. 5-1) at 7-9.  Plaintiff exhibits the Grievance Response (Doc. 1-1 at 8-9; Doc. 5-1 at 4-5), which was based upon defendant RN Abel's review of his medical chart.  That response dated July 11, 2011, provided:

> You submitted a grievance to facility medical staff (CCS) stating that you were not treated for a sexually transmitted disease that you report you have had as a result of being sexually assaulted in 2003.
>
> R.N. Abel reviewed your medical chart and has provided the following information:
>
>     1) "Inmate has been seen by nursing concerning rectal bleeding 11 different times . . . .
>
>     2) "He has been referred to the HCP if the recommended treatment was not helpful per nursing guidelines.

---

[7]     In Case No. 09-3146, plaintiff exhibited several requests regarding hernia pain and constipation and exhibited medical bills for a hernia operation in 2010.

3) April 5, 2009 – "Inmate had a colonoscopy with follow-up done on 4-24-10, which is when he was diagnosed with a prolapsed rectum, but no sexually transmitted disease."

4) 8-21-09 – "Inmate had a surgical repair of the prolapsed rectum with numerous follow-ups."

5) "Inmate was a patient at the LSSH – IR from 12-03-09 to 9-17-10. Inmate had a colonoscopy with banding of hemorrhoids done while a patient there at that time."

6) "Inmate has been seen by Dr. Stanton due to complaints of lesions around his rectum that he has noticed for the last few months. Dr. Stanton would like to consult with another HCP for further assessment and consideration for treatment but there is no definite diagnosis of a sexually transmitted disease. Dr. Stanton is considering that the lesions are possible Verruca which can be treated."

"Previous exams performed by Dr. S. Kepka and Stanton have indicated that inmate has hemorrhoids" and has been prescribed treatment both by nursing staff per nursing guidelines and per Dr.'s Kepka and Stanton. Assessments did not reveal Verruca. Also exams performed by Dr. Slater while doing a colonoscopy did not reveal any type of sexually transmitted disease. Further recommendations for treatment are being discussed and inmate Garza will be followed-up on within the next two weeks".

In its prior order, the court quoted plaintiff's exhibit of the findings and conclusions of the LCMHF Principal Administrator dated August 17, 2011:

. . . [Y]ou state that in 2003 [you] were raped at LCF . . . . You also state . . . [you've] contracted an (STD due) to the rape. You then allege you have anul ([sic] warts and you are not being treated. . . . [Y]our Unit Team Counselor . . . spoke with Marlene Abel, R.N.-D.O.N., and she reported the following: You have been seen by nurses regarding your rectal

bleeding eleven different times, once in December
2005, once in July 2006, four times in 2010, and five
times so far in 2011. You were referred to the HCP if
the recommended treatment was not helpful per nursing
guidelines. On April 5, 2009 you had a colonoscopy
with follow-up on April 24, 2009. At this time you
were diagnosed with a prolapsed rectum, but not a
sexually transmitted disease. On August 21, 2009,
surgical repair of the prolapsed rectum was performed
as well as numerous follow-ups. You were a patient at
LSSH – IR from December 3, 2009 to September 17, 2010.
During this time you had a colonoscopy along with
banding of hemorrhoids. You were seen by Dr. Stanton
due to your complaints of lesions around your rectum
and the lesions being there for months. Dr. Stanton
will consult with another HCP for further assessment
and consideration for treatment, but they have not
made a definite diagnosis of any sexually transmitted
disease at this time.

The court further noted plaintiff's exhibit of the Response on
Appeal finding that the "inmate has been seen multiple times for
rectal bleeding" and "treatment has been rendered." That
Response also provided that [t]he Department's Contract Monitor
Consultants reviewed his concerns" and the inmate "has received
appropriate treatment."

Without a doubt, chronic rectal bleeding is a serious and
worrisome medical condition, and the court sympathizes with Mr.
Garza. However, this is not an uncommon condition, and it is
most often associated with hemorrhoids. In any event, Mr. Garza
has alleged no facts to contradict the diagnoses of prison
medical personnel that his chronic symptoms including rectal
discharge of bright red blood and severe rectal pain, are the
result of recurrent hemorrhoids, rectal prolapse, constipation

and/or his abdominal hernia.  Nor has he alleged any facts to suggest that his symptoms are the result of some different and more sinister condition that is being ignored.

Third, Mr. Garza fails to allege facts indicating that any defendant medical provider has acted with deliberate indifference in either diagnosing his symptoms or in prescribing treatment.  As plaintiff was informed, the "deliberate indifference" standard has two components, with the "subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991)(The deliberate indifference standard has "a subjective component requiring that the offending officials act with a sufficiently culpable state of mind."); *Martinez*, 430 F.3d at 1304.  "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (*citing Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez*, 430 F.3d at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).  Plaintiff alleges no facts whatsoever to suggest that any defendant who has participated in providing him with medical treatment at the

LMHCF "knew about and disregarded a 'substantial risk of harm' to [his] health or safety" or otherwise acted with a culpable state of mind. *Oxendine v. Kaplan,* 241 F.3d 1272, 1277 (10th Cir. 2001). To the contrary, Mr. Garza "acknowledges" the efforts of CCS staff.

Finally, Mr. Garza fails to establish that his allegations amount to anything more than a negligence or malpractice claim. In fact, plaintiff himself describes this claim as "medical malpractice." Mr. Garza has been repeatedly informed over years that the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Perkins v. Kan. Dep't of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999); see also *Self v. Crum*, 439 F.3d 1227 (10th Cir.), *cert. denied*, 549 U.S. 856 (2006); *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). In the court's prior order, Mr. Garza was specifically informed that he "must allege sufficient additional facts to show a federal constitutional violation and more than a mere disagreement or malpractice." Order (Doc. 3) at 14. Plaintiff's own allegations and exhibits still plainly reveal

that his claim amounts to nothing more than his disagreement with trained medical providers as to the diagnosis for his symptoms including his chronic rectal bleeding.[8]  As plaintiff has been repeatedly informed, a mere difference of opinion among an inmate and prison medical personnel regarding diagnosis or treatment does not constitute cruel and unusual punishment.  *See Estelle*, 429 U.S. at 106-07; *Oxendine*, 241 F.3d at 1277 n. 7 ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976)(Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints.").  The United States Supreme Court's holding bears

---

[8]    Plaintiff was informed in the court's prior order that in cases involving allegations of missed diagnoses, liability may be established by showing:

> a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, e.g., a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, e.g., a gangrenous hand or a serious laceration; [or] (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, e.g., a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell.

*Self*, 439 F.3d at 1232.  Plaintiff alleges no facts to establish liability based on any such scenario.

repeating:

> [A] complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not
> state a valid claim of medial mistreatment under the
> Eighth Amendment.  Medical malpractice does not become
> a constitutional violation merely because the victim
> is a prisoner.  In order to state a cognizable claim,
> a prisoner must allege acts or omissions sufficiently
> harmful to evidence deliberate indifference to serious
> medical needs.  It is only such indifference that can
> offend "evolving standards of decency" in violation of
> the Eighth Amendment.

*Estelle*, 429 U.S. at 105-106 (footnote omitted).

In summary, the court finds that the Amended Complaint
fails to state a claim upon which relief may be granted.[9]
Accordingly, this § 1983 action is dismissed and all relief is
denied.


## IV.  MOTIONS

The court has considered plaintiff's Motion to Amend Civil
Rights Complaint (Doc. 7).  Months prior to filing this motion,
plaintiff submitted his complete First Amended Complaint (Doc.
5).  He was not required to file a motion with that First
Amended Complaint because a plaintiff is entitled to amend once
as of right.  His subsequent motion does not seek permission to
file the First Amended Complaint.  Nor is it a sufficient motion
to file a Second Amended Complaint because there is no complete

---

[9]     In the usual case, the plaintiff fails to allege sufficient facts to
support a constitutional claim.    Here, Mr. Garza's own allegations and
exhibits establish that he fails to state a claim under the Eighth Amendment.

Second Amended Complaint attached. Instead, plaintiff has attached a single page with the title "1st Amended Complaint" and no caption or defendants. It is apparent that plaintiff merely seeks to add a couple sentences to his First Amended Complaint: (1) "deliberate indifference" to "Cause of Action Counts I, II, III" and (2) a request for the court to liberally construe his pleadings. Mr. Garza has previously been informed that he may not amend a complaint by submitting a page containing only the desired additions. He has also been informed that any motion to amend must be accompanied by a complete amended complaint because an amended complaint completely supersedes the prior complaint and any claims or allegations not included in the amended complaint are no longer before the court. The court grants this motion only to the extent that it adds to the First Amended Complaint (Doc. 5) plaintiff's statement that defendants were deliberately indifferent to his constitutional rights. Plaintiff's request for liberal construction is superfluous, as the court is already obliged to liberally construe pro se proceedings.

Plaintiff has improperly embedded motions within his Amended Complaint. He has previously been informed that motions must be filed separately and have the caption of the case and the title of the motion at the top of the first page. Otherwise, they may not get docketed and tracked as motions.

Plaintiff's embedded motion for appointment of "federal counsel" and his request that the court subpoena "Captain's Log Books of 2003" from the LCF to "track identify of" the John Doe defendants are considered and denied for lack of factual or legal basis and as moot.


## V.  THIRD STRIKE

In its prior Memorandum and Order, the court set forth the following in a footnote:

28 U.S.C. § 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

*Id*. Federal court records reflect that Mr. Garza has filed at least two cases in this court that were dismissed and plainly qualify as strikes: (1) *Garza v. Bandy*, 08-0384 (D.Kan. May 16, 2008)(Dismissed for failure to state a claim as no state action in money damages suit against criminal defense attorney); and (2) *Garza v. Correct Care Solutions*, 09-3146 (D.Kan. June 28, 2011)(defendants' motion to dismiss converted to motion for summary judgment and sustained on ground that plaintiff failed to exhaust administrative remedies). *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003)("A dismissal based on lack of exhaustion . . . should ordinarily be without prejudice. Nevertheless, the dismissal may constitute a strike for purposes of 28 U.S.C. § 1915(g)."); *Smith v. Cowman*, 208 Fed.Appx. 687, 689 (10th Cir. 2006)(unpublished opinion

cited as persuasive not binding)("Because the dismissal of the complaint was based on a failure to exhaust administrative remedies, it accrues as Mr. Smith's third strike."). . . .

Mr. Garza appealed the decision in *Garza v. CCS,* 09-3146 to the Tenth Circuit Court of Appeals (App. Case No. 11-3194). On December 16, 2011, the Tenth Circuit issued its opinion affirming the judgment of the district court. Ordinarily an affirmance of a dismissal would not count as a strike, but here the Tenth Circuit also denied plaintiff's request to proceed in forma pauperis. Generally, the denial of a request to proceed in forma pauperis on appeal entails a finding that the appeal is frivolous. The strike for this appeal, if any, ripened after the time expired in which Mr. Garza could have filed a petition for certiorari and would presently count as Mr. Garza's third "prior occasion" or strike. See *Thomas v. Parker*, 609 F.3d 1114, 1121 (10th Cir. 2010), *cert. denied*, 131 S.Ct. 1691 (2011); *Knox v. Aldridge*, 412 Fed.Appx. 168, 171 (10th Cir. 2011);[10] *Allen v. Reynolds*, 475 Fed.Appx. 280, 285 (10th Cir. 2012); *Sosa v. Albin*, 17 Fed.Appx. 885, 886 (10th Cir. 2001).

Even if the above appeal does not qualify as Mr. Garza's third strike, the dismissal of this case does. However, this strike will not take effect or "ripen" until either the appeal time has expired or a filed appeal has been determined. Once

---

[10]    In accord with Circuit rules, unpublished cases are cited herein not for precedential value but for persuasive reasoning.

the third strike ripens, Mr. Garza will be barred from proceeding without prepayment of the full filing fee in future civil actions or appeals in federal court unless he is "under imminent danger of serious physical injury," § 1915(g), and he makes "specific [and] credible allegations" to that effect. *Childs v. Miller*, 713 F.3d 1262, 1267 (10th Cir. 2013)(citing *Kinnell v. Graves*, 265 F.3d 1125, 1127–28 (10th Cir. 2001)).

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is hereby assessed an initial partial filing fee of $11.50, and this amount is immediately due and owing to the clerk of the court.

**IT IS FURTHER ORDERED** that plaintiff's Application to Proceed without Prepayment of Fees (Doc. 4) is granted, and plaintiff is hereby assessed the remainder of the $350.00 filing fee to be paid through payments automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2). The Finance Office of the facility where plaintiff is currently confined is directed by copy of this Order to collect from plaintiff's account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until plaintiff's outstanding filing fee obligation has been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing

fee, including but not limited to providing any written authorization required by his custodian to disburse funds from his account.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Amend Civil Rights Complaint (Doc. 7) is granted, but only to the extent that plaintiff's statement, that defendants were deliberately indifferent to his constitutional rights, is hereby added to the First Amended Complaint (Doc. 5).

**IT IS FURTHER ORDERED** that plaintiff's motions imbedded in his Amended Complaint (Doc. 5) are denied.

**IT IS FURTHER ORDERED** that this action is dismissed for failure to state a federal constitutional claim.

The clerk is directed to send a copy of this Order to plaintiff, to the finance officer at the facility in which plaintiff is currently confined, and to the court's finance office.

**IT IS SO ORDERED.**

Dated this 3rd day of September, 2013, at Topeka, Kansas.




<u>**s/Sam A. Crow**</u>
**U. S. Senior District Judge**